UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PTM Technologies, Inc., | ) | Case No. 10-50980 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| PTM Technologies, Inc., | ) | Adversary No. 11-6063 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Carolina Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This adversary proceeding came before the court on October 3, 2012, for hearing on the Plaintiff's motion for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure.  John M. Blust appeared on behalf of the Plaintiff and Jason B. Buckland and J. Alexander S. Barrett appeared on behalf of the Defendant.

In this proceeding the Plaintiff seeks to avoid a guaranty in which the Debtor, PTM Technologies, Inc., purported to guarantee the obligation of Blue Ridge Airlines, LLC ("Blue Ridge") to the Defendant under a promissory note from Blue Ridge on the theory that the guaranty constitutes a fraudulent conveyance under section 548(a)(1)(B) of the Bankruptcy Code.  Having considered the motion, the briefs and the other filings submitted by the parties in

support of and in opposition to the motion, the court has concluded that the motion should be denied.

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056; <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2546, 2548 (1986). In considering a motion for summary judgment, the court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." <u>Seabulk Offshore, Ltd. v. Am. Home Assur. Co.</u>, 377 F.3d 408, 418 (4th Cir. 2004) (citing <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001)). The party moving for summary judgment has the initial burden of proving the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. <u>Celotex</u>, 477 U.S. at 323. Once the moving party has met its initial burden of proof, the non-moving party must then set forth specific facts sufficient to raise a genuine issue for trial. <u>Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986). In determining whether to grant summary judgment, the court's role does not include weighing the evidence or making findings of fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510 (1986). The proper inquiry is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. The court is satisfied that the record before the court does not present a situation in which the plaintiff is entitled to prevail as a matter of law.

The relief sought in this proceeding is the avoidance of an obligation rather than the avoidance of a transfer of tangible property. In order to obtain such relief under section 548(a)(1)(B), a plaintiff must allege and prove that the obligation was incurred on or within two years before the date of the filing of the petition; that the debtor received less than a reasonably equivalent value in exchange for incurring the obligation; and that the debtor either was insolvent on the date the obligation was incurred or became insolvent as a result of such obligation or that the debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor represented unreasonably small capital, or intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured, or made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

- 3 -

The Defendant admits that the guaranty at issue was "incurred" within two years but contends that there are material issues of fact regarding whether the Debtor received reasonably equivalent value or was insolvent when the guaranty was executed. Thus, these are the issues that must be addressed by the court.

The Bankruptcy Code does not define "reasonably equivalent value." In the absence of a statutory definition, the courts have divided the inquiry regarding reasonably equivalent value into a two-step process in which it is first determined whether the debtor received any value in the transaction. Secondly, if some value was received, it is then determined whether such value was "reasonably equivalent" to the property transferred by the debtor or the obligation incurred by the debtor. See 5 Collier on Bankruptcy ¶ 548.05[2][a] 16th ed. rev. 2012). Determining whether a debtor received reasonably equivalent value in exchange for incurring an obligation involves making a comparison between the value received by the debtor and the extent of the obligation incurred by the Debtor. Id.

The Plaintiff argues that there are undisputed facts in the record that show the Debtor received no value in exchange for executing the guaranty in favor of Carolina Bank. The Plaintiff relies upon the general rule that obligations incurred by a debtor solely for the benefit of a third party are treated as not supported by a reasonably equivalent value. "Courts generally find

- 4 -

a lack of reasonably equivalent value when the transfer or obligations benefits a third party, such as an individual's payment of a relative's debt or the giving of a guaranty of another's debts." 5 Collier on Bankruptcy ¶548.05[2][b] (16th ed. rev. 2011). It is sometimes said that in such a transaction, the debtor receives no "direct" benefit from the transfer or obligation. See Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 646 (3rd Cir. 1991).

The undisputed facts in the record are sufficient to invoke this general rule. It is undisputed that the loan by Carolina Bank was extended to Blue Ridge alone. The loan proceeds went to Blue Ridge and apparently were utilized by Blue Ridge alone to acquire an Eclipse airplane. The obligation to repay the loan that was then guaranteed by the Debtor was that of Blue Ridge alone. Under these undisputed facts, the Debtor received no direct benefit in the transaction, having received none of the loan proceeds and no ownership interest in the property that was purchased with such proceeds.

The lack of direct benefit to the Debtor, however, does not necessarily mean that the Plaintiff is entitled to prevail on the motion for summary judgment. An exception to the above-stated general rule has been recognized where a debtor receives an indirect benefit from paying or guaranteeing the obligation of a third party. This exception is recognized "if the transfer does

- 5 -

not negatively affect the debtor's net worth because the transfer
caused the debtor to receive an indirect benefit. . . ."  2 Collier
at ¶ 548.05[2][b].  An example of such indirect benefit is where
the debtor and the third party "are so related or situated that
they share an 'identity of interest' because what benefits one
will, in such case, benefit the other to some degree."  In re Ear,
Nose and Throat Surgeons, Inc., 49 B.R. 316, 320 (Bankr. D. Mass.
1985) (quoting In re Royal Crown Bottlers, Inc., 23 B.R. 28, 30
(Bankr. N.D. Ala. 1982)).  The concept of indirect benefit also has
been recognized and applied in cases involving so-called "cross-
stream" guaranties in which two or more affiliated or sister
corporations are engaged in combined or inter-related operations
and one of the subsidiary corporations guarantees the obligation of
another subsidiary engaged in such operations.  E.g. Mellon Bank,
N.A. v. Metro Commc'ns, Inc., supra.

Carolina Bank correctly argues that there is evidence in the
record tending to show that the Debtor received indirect benefit as
a result of the loan to Blue Ridge.  Through an affidavit,
deposition testimony and business records pertaining to the use of
the airplane, the Defendant produced evidence regarding the
relationship between the Debtor, Alternative Brands, Inc. ("ABI"),
Renegade Tobacco Company ("RTC"), Renegade Tobacco Company ("RTC")
and the existence of coordinated operations among these companies.
The Defendant's evidence tended to show that RHI is the parent of

Alternative Brands, Inc. ("ABI") and Renegade Tobacco Company ("RTC"), and also the parent of the Debtor; that Compliant Tobacco Company, Inc. is the parent of RHI as well as the parent of Blue Ridge; that at the top of the business structure was Calvin Phelps, the sole owner of Compliant; and that all of these companies had common management.  The evidence also tended to show that there were coordinated operations among these companies in which equipment provided by the Debtor was being used by ABI to fabricate tobacco products that were branded, retailed and sold by RTC and that the airplane acquired by Blue Ridge was used for the benefit of the other companies by using the airplane to call on customers or prospective customers in order to promote the products fabricated by ABI and sold by RTC and thereby to enhance the income stream that fed all of the companies, including the Debtor.  This evidence, when construed in the light most favorable to the Defendant, was sufficient to raise an issue as to whether the use of the Eclipse airplane to promote and enhance the business of ABI indirectly benefitted the various companies involved in the coordinated and interrelated business operations.  Given this showing by the Defendant, an issue of material fact was raised as to whether the Debtor received value in connection with the transaction in which the Debtor guaranteed the Blue Ridge note.

There also is an issue of fact regarding the "value" of the obligation incurred by the Debtor when it executed the guaranty.

It is well settled that the amount of a guarantor's liability must be reduced or discounted by taking into account the probability that the primary debtor will default and the amount of the liability which likely would be incurred by the guarantor if such a default occurred. See Covey v. Commercial Nat'l Bank, 960 F.2d 657 (7th Cir. 1992). This rule is applicable in the context of a fraudulent conveyance action in which it is asserted that a guarantor's liability under a guaranty should be nullified as a fraudulent conveyance. See In re Chase & Sanborn Corp., 904 F.2d 588, 594 (11th Cir. 1990)("It is well established, however, that a contingent liability cannot be valued at its potential face amount; rather, 'it is necessary to discount it by the probability that the contingency will occur and the liability become real.'"). As recognized in Chase & Sanborn, one of the factors that must be taken into account is the value of any collateral that secures the obligation which has been guaranteed. Id. The Defendant argues that when this rule is applied in this proceeding, the value of the obligation incurred by the Debtor is minimal or zero. The Plaintiff offered no evidence regarding the value of the guaranty. The Defendant, on the other hand, supported its argument regarding the value of the guaranty with evidence that Blue Ridge's obligation to the Defendant was guaranteed by seven other

guarantors[1] and also secured by a lien on the Eclipse airplane which, according to the Defendant's evidence, had a value significantly greater that the amount owed under the promissory note signed by Blue Ridge. While there may be questions regarding the Defendant's valuation of the airplane or whether the financial condition and viability of the other guarantors was such that their guaranties reduced the exposure of the Debtor on its guaranty, these are not questions that are resolvable in the context of a motion for summary judgment.

An additional reason that the Plaintiff is not entitled to a summary judgment is that the Plaintiff failed to offer competent evidence showing that the Debtor was or became insolvent when the guaranty at issue was executed. Rather than submit an affidavit or other sworn testimony regarding the Debtor's final condition, the Plaintiff relied solely upon an unsworn expert's report. See Wokas v. Gilbarco, Inc., No. 1:98CV0026, 1999 WL 1939239 at *3 n.3 (M.D.N.C. Aug. 3, 1999). Apart from this deficiency, the Defendant offered evidence tending to show that the Debtor was solvent when the guaranty was executed.

For the foregoing reasons, the court concludes that the Plaintiff's motion for summary judgment should be denied. An order

--------------------------------------------------

[1]The other guarantors were Mr. Phelps, himself, and ABI, RTC, RHI, CLC Properties, LLC, Dogwood Winery & Vineyards, Inc. and Compliant Tobacco Company, LLC., all of which were companies owned either directly or indirectly by Mr. Phelps.

so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 29th day of October, 2012.

WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST


John M. Blust, Esq.
P.O. Box 3324
Greensboro, NC 27402-3324

Jason B. Buckland, Esq.
J. Alexander Barrett, Esq.
300 N. Greene Street
Greensboro, NC 27401